AO-106 (Rev. 06/09)-Application for Search Warrant

# FILED

# UNITED STATES DISTRICT COURT

for the

Northern District of Oklahoma

JAN 1 6 2025

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

| In the Matter of the Search of | ) |
|---|---|
| *the Sixteen Electronic Devices Currently Stored at the* | ) |
| *Tulsa Police Department Property Room at 1111 W 17th* | ) |
| *St, Tulsa, Oklahoma 74107* | ) |
| | ) |

Case No. **25-MJ-25-JFJ**

**FILED UNDER SEAL**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

> See Attachment "A"

located in the ___Northern___ District of ___Oklahoma___, there is now concealed *(identify the person or describe the property to be seized)*:

> See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| **18 U.S.C. § 2251(a)** | Sexual Exploitation of a Child |
| **18 U.S.C. §§ 2252(a)(2) and (b)(1)** | Receipt and Distribution of Child Pornography |
| **18 U.S.C. §§ 2252(a)(4)(B) and (b)(2)** | Possession of and Access with Intent to View Child Pornography |

The application is based on these facts:

> **See Affidavit of TFO Aubrey Williams, attached hereto.**

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Aubrey Williams, TFO, HSI
*Printed name and title*

Subscribed and sworn to by phone.

Date: ___1/17/2025___

*Judge's signature*

City and state: Tulsa, Oklahoma

Jodi F. Jayne, U.S. Magistrate Judge
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In the Matter of the Search of the Sixteen Electronic Devices Currently Stored at the Tulsa Police Department Property Room at 1111 W 17th St, Tulsa, Oklahoma 74107 | Case No. _____ <br><br> **FILED UNDER SEAL** |

### Affidavit in Support of an Application
### Under Rule 41 for a Warrant to Search and Seize

I, Aubrey Williams, being first duly sworn under oath, depose and state:

### Introduction and Agent Background

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant authorizing the examination of property—the sixteen electronic devices listed further below—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

1. I am a federal law enforcement officer as defined under Rule 41(a)(2)(C) and am authorized to request this search warrant because I am a government agent who is engaged in enforcing federal criminal laws and I am within the category of officers authorized by the Attorney General to request such a warrant. I am a Task Force Officer with Homeland Security Investigations (HSI) and have been since September 2024. I am currently assigned to the Tulsa Resident Agency of the Dallas,

Texas field office. In addition to becoming a Task Force Officer with HSI, I have been employed as a Police Officer with the Tulsa, Oklahoma Police Department since January 27, 2020. I am currently assigned to the Tulsa Police Department Sexual Predator Digital Evidence Recovery Unit with a primary focus on child exploitation investigations. Since becoming a Task Force Officer with HSI, I have investigated violations of federal law, to include federal violations concerning child pornography and the sexual exploitation of children. I have gained experience through training in classes and work related to conducting these types of investigations. Further, as a Homeland Security Investigations Task Force Officer, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

2. As part of my duties as a HSI Task Force Officer, I investigate criminal violations relating to child pornography, including Advertising to Receive, Exchange, Produce, Display, Distribute, and Reproduce child pornography, Selling or Buying of Children, and the production, transportation, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2551(d)(1), 2251A(b), and 2252. I have received training in the areas of child pornography and child exploitation and have observed and reviewed numerous examples of child pornography, as defined in 18 U.S.C. § 2256, in all forms of media. I have been involved in several child pornography investigations and am familiar with the tactics used by individuals who collect and distribute child pornographic material.

2

3. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on my personal observations, knowledge obtained from other law enforcement officers, my review of documents related to this investigation, conversations with others who have personal knowledge of the events and circumstances described herein, and a review of open-source information including information available on the Internet. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact I or others have learned during the course of this investigation.

4. Based on my training, experience, and the facts set forth in this affidavit, there is probable cause to believe that evidence of violations of 18 U.S.C. § 2251(a) (Sexual Exploitation of a Child); 18 U.S.C. §§ 2252(a)(2) and (b)(1) (Receipt and Distribution of Child Pornography); and 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) (Possession of and Access with Intent to View Child Pornography) will be located in the electronically stored information described in Attachment B and is recorded on the Devices described in Attachment A.

### Jurisdiction

5. "[A] warrant may be issued to search for and seize any property that constitutes evidence of a criminal offense in violation of the laws of the United States." 18 U.S.C. § 3103a.

6. The requested search is related to the following violations of federal law:

3

a.    Title 18, United States Code 2251(a) – Sexual Exploitation of a Child – is violated by any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed

b. Title 18, United States Code, Sections 2252(a)(2) and (b)(1) prohibit any person from knowingly receiving or distributing, or attempting or conspiring to receive or distribute, any visual depiction that has been mailed, shipped, or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct; and

c. Title 18, United States Code, Sections 2252(a)(4)(B) and (b)(2) prohibit any person from knowingly possessing or accessing with the intent to view, or attempting or conspiring to possess or access with the intent to view, one or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

4

7. Venue is proper because the person or property described in this affidavit is located within the Northern District of Oklahoma. Fed. R. Crim. P. 41(b)(1).

## Identification of the Device to be Examined

8. The property to be searched are sixteen electronic devices listed below:

    a.  Nikon Camera

    b.  Samsung Tablet

    c.  Compaq PC

    d.  Asus Laptop black in color, serial number 15G29L000780

    e.  Asus Destroyed Laptop

    f.  HP Laptop red in color

    g.  HP Laptop blue in color

    h.  TCL Tablet

    i.  Gateway Laptop

    j.  EMachines PC

    k.  Asus Laptop silver in color

    l.  Seagate 2TB Hard Drive

    m. Seagate 1TB Hard Drive

    n.  WD 1TB Hard Drive

    o.  Asus Laptop black in color

    p.  Samsung Cell Phone, black in color

hereinafter referred to as the "Devices." The Devices are currently located at the Tulsa Police Department Property Room at 1111 W 17th St, Tulsa, Oklahoma 74107.

9. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

### Definitions

10. The following definitions, inclusive of all definitions contained in 18 U.S.C. § 2256, apply to this affidavit and the attachments incorporated herein:

a. "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct;

6

b. "Internet Protocol address" or "IP address" refers to a unique number used by a computer or electronic device to access the Internet. IP addresses can be dynamic, meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet. IP addresses may also be static, which means the ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet;

c. "Electronic Mail," commonly referred to as email (or e-mail), is a method of exchanging digital messages from an author to one or more recipients. Modern email operates across the Internet or other computer networks. Email systems are based on a store-and-forward model; that is, email servers accept, forward, deliver, and store messages. Neither the users nor their computers are required to be online simultaneously; they need only connect briefly, typically to an email server, for as long a period of time as it takes to send or receive messages. One of the most commons methods of obtaining an email account is through a free web-based email service provider such as, Outlook, Yahoo, or Gmail. Anyone with access to the Internet can generally obtain a free web-based email account;

d. A "hash value" or "hash ID" is a unique alpha-numeric identifier for a digital file. A hash value is generated by a mathematical algorithm, based on the file's content. A hash value is a file's "digital fingerprint" or "digital DNA." Two files having identical content will have the same hash value, even if the file names are different. On the other hand, any change to the data in a file, however slight, will

change the file's hash value, even if the file name is unchanged. Thus, if two files have the same hash value, they are said to be identical, even if they have different file names;

e. The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state;

f. "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years;

g. "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form;

h. "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person; and

i. "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of

8

conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

### Probable Cause

11. The Tulsa Police Department received CyberTipline Report **195907558** from the National Center for Missing and Exploited Children (NCMEC) after MediaLab/Kik reported that the listed subscriber information was used to upload and share eleven (11) files of apparent child sex abuse material. The suspect information provided by MediaLab/Kik to NCMEC is as follows:

| CyberTip 195907558 | |
|---|---|
| **Email Address** | subsanity@proton.me (verified) |
| **Screen/User Name** | alpha_wicked |
| **ESP User ID** | alpha_wicked_t14 |
| **IP Address** | 98.160.127.214 (Login) Port: 44080 |
| **IP Capture Date** | 06-15-2024 21:39:34 UTC |

MediaLab/Kik attached the reported files to the CyberTip. I reviewed the files and found at least one image that I recognized as apparent child sex abuse material including the below listed file:

| Exemplar File from CT 195907558 | |
|---|---|
| Filename: | 56f841ce-0d83-40d8-9917-229d66712495.mp4 |
| MD5: | b1577a36096eb2111baf77464ee17a93 |
| Did Reporting ESP view entire contents of uploaded file? | Yes |
| Did Reporting ESP view the EXIF of uploaded file? | (Information Not Provided by Company) |
| Were entire contents of uploaded file publicly available? | (Information Not Provided by Company) |
| Additional Information: | Video was sent from this user to another user via private chat message |
| Description by Affiant | |
| The file is a video that is 1:10 seconds in length. The video depicts a nude female child approximately 5-7 years of age laying on her back between an adult male's legs. The man's penis is in the child's mouth. The child begins to arch her back and attempts a back bend. The man repeatedly reinserts his penis into the child's mouth. This continues for the remainder of the video. | |

12. NCMEC CyberTipline Report **195907558** stated the IP Address utilized by the defendant was serviced by Cox Communications and NCMEC provided the additional information listed below. The information provided below indicates the crime was committed within the city of Tulsa in the State of Oklahoma.

| IP Address | Country | Region | City | Postal Code | Lat/Long | ISP/Org |
|---|---|---|---|---|---|---|

| 98.160.127.214 | US | OK | Tulsa | 74127 | 36.1544/ 96.0341 | Cox Communications/ Cox Communications |
|---|---|---|---|---|---|---|
| | | | | | | |

13. A second CyberTipline Report, **196348307**, was generated on July 11, 2024 by MediaLab/Kik for subscriber **alpha_wicked**. This report stated that the listed subscriber information was used to upload and share forty-eight (48) files of apparent child sex abuse material. The subscriber utilized the same IP address listed in the previous CyberTip.

14. On August 09, 2024, I submitted a State of Oklahoma search warrant to MediaLab/Kik for the **alpha_wicked** account. The warrant was signed by Tulsa County Judge Seibert on August 09, 2024 at approximately 1447hr. On September 15, 2024, I received a response from MediaLab/Kik. I processed the return and found at least sixty-six (66) images and videos I recognized as Child Sex Abuse Material.

15. I read through the chat messages sent by the **alpha_wicked** account and statements that the account was owned by a male who lived in the "Gillcrease" area of Tulsa, Oklahoma. There were frequent discussions about the trade and sale of files of child sex abuse material. On July 03, 2024, the following exchange took place between Kik users **alpha_wicked** and **johns1642**:

J: Hey you like teens?

A: yes

J: What ages?

A: 6+

J: Let's trade

J: Mmm what a perfect tight hole

J: Oh fuck and those tits

A: you got session

J: Ya we do!

J: Very hot

A: got daddy fucking son and daughter at the same time?

16. On August 08, 2024, I submitted a State of Oklahoma search warrant to Cox Communications, Inc. for the IP Address **98.160.127.214 Port: 44084** for the time period of June 15, 2024 at 21:39:34 UTC. The warrant was signed by Tulsa County Judge Seibert on August 08, 2024 at 1144hr. On August 22, 2024, I received a response from Cox Communications, Inc. I reviewed the response and found the following account details:

| Name | CHRISTINA COMPUZANO |
| --- | --- |
| Address | 1802 N XENOPHON AVE, TULSA, OK 74127-2225 |
| Telephone | 918 860-3158, 918 831-4206 |
| Email address/es: | NONE |

17. I conducted a police records check and found that Christina CAMPUZANO and Jeremiah DRAKE both have 1802 N Xenophon Ave, Tulsa, Oklahoma listed as their residence on their Oklahoma state issued driver's license and in multiple police reports. DRAKE's driver's license photo is similar in appearance to multiple selfie-style photos found in the MediaLab/Kik return.

18. In a Tulsa Police Report from July 20, 2020, CAMPUZANO provided the phone (918)-860-3158 as her boyfriend, Jeremiah DRAKE's, cell phone. On December 31, 2024, I ran a records check of the phone number (918)-860-3158 in Cellhawk and received the following response:

| Service Provider | T Mobile |
|---|---|
| Phone Type | Mobile |
| Name | Jeremiah Jacob Drake |
| Address | 1802 N Xenophon Ave Tulsa, OK 74127 |

In an additional Tulsa Police incident from August 08, 2024, DRAKE and CAMPUZANO are identified as residents of 1802 N Xenophon Ave. In body-worn camera footage from this interaction, CAMPUZANO and DRAKE stated that they both reside at the address and have one child together.

19. On December 31, 2024 and January 02, 2025, I observed a 2007 gray Ford F150 bearing Oklahoma license plate LWH281 (VIN 1FTRX14W77KC17812) in the driveway of 1802 N Xenophon Ave,

13

Tulsa, Oklahoma. This vehicle is registered to Jeremiah J DRAKE at 1802 N Xenophon Ave, Tulsa, OK.

20. On January 02, 2025, I submitted a State of Oklahoma residential search warrant for 1802 N Xenophon Ave, Tulsa, Oklahoma 74127. The warrant was signed by Osage County Judge Bo Estes on January 02, 2025 at approximately 1104hr. The warrant was served on January 03, 2025 by members of the Tulsa Police Department Sexual Predator Digital Evidence Recovery Unit and the Tulsa Police Department River Bike Patrol Unit. Devices a – j, listed in paragraph 8, were seized from the residence. Devices a – j were seized from the master bedroom, the dining room, and entryway of the residence. During the warrant service, DRAKE's vehicle was located in the area of 4500 E Zion St, Tulsa, Oklahoma. I contacted DRAKE via phone call and requested to meet with him. DRAKE declined to meet with me and then entered the 2007 Ford F150 bearing Oklahoma license plate LWH281 and began driving in the direction of the residence at 1802 N Xenophon Ave, Tulsa, Oklahoma.

21. Detective Raymond Ackermann observed DRAKE driving eastbound on East Young Street when DRAKE failed to stop at the Stop Sign at the intersection of East Young Street and North Toledo Avenue in Tulsa, Oklahoma. Detective Ackermann initiated a traffic stop. DRAKE pulled over at approximately 4200 East Young Street. DRAKE was taken into custody by Detectives Ackermann and me. I observed an open container of

14

beer in the center console cupholder of the vehicle. The vehicle did not have valid insurance at the time of the traffic stop. The vehicle was searched pursuant to a possible DUI investigation. During the search, multiple electronic devices – including external hard drives, laptop computers, and DRAKE's cell phone – were located. Due to the nature of the ongoing investigation, these devices were seized pending a search warrant to prevent the destruction of digital evidence. Devices k – p, listed in paragraph 8, were seized from the vehicle.

22. During the search warrant at 1802 N Xenophon Ave, Tulsa, Oklahoma, a potential minor victim (MV1) was located. MV1 was taken into protective with the assistance of Osage County Department of Human Services. MV1 was then transported to the Child Advocacy Network for a Forensic Interview with Interviewer Kelsey Hess.

23. During the interview, MV1 made the following statements:

- DRAKE used to live with MV1 and CAMPUZANO

- DRAKE had to move out because he was caught doing "something illegal." When asked what DRAKE had been caught doing, MV1 said he wasn't allowed to say because DRAKE had told him it was "really illegal"

- DRAKE told MV1 that DRAKE would go to jail if MV1 ever told anyone what he was doing

- MV1 had been keeping this secret for four years - since he was four years old

- DRAKE taught MV1 how to do the "illegal" thing and it is an activity they do together

- DRAKE had been caught by CAMPUZANO doing the "illegal" thing with his girlfriend, Danielle [WOODIE]

- DRAKE taught MV1 how to do the "illegal" thing to WOODIE

- MV1 said that the "illegal" thing is something his mom and dad did together and it's how he was born, but that MV1's mother did not know that MV1 was doing the "illegal" thing with DRAKE

- MV1 said the "illegal" thing is how girls become pregnant

- MV1 said DRAKE would teach him the "illegal" thing at 1802 N Xenophon Ave, Tulsa, Oklahoma

- MV1 stated that DRAKE taught him the "illegal thing" in DRAKE's car (the 2007 Ford F150)

- MV1 was then shown photos recovered from the MediaLab/Kik search warrant return

  • MV1 identified a photo of DRAKE as Jeremiah Jacob DRAKE

  • MV1 identified a photo of WOODIE's oldest daughter

  • MV1 identified a photo of a naked adult woman with MV1, also naked, sitting on her lap. The woman is holding MV1's legs apart so that his anus and genitals are exposed. When shown the photo MV1

said "I see me." When asked what was happening in the photo, MV1 said "I'm not going to tell you, it's the illegal thingy."

- MV1 said that the "illegal" thing involved his "bottom parts" and defined his "bottom parts" as being "above your legs and between your tummy and legs"

- The interviewer presented paper dolls that represented a naked female child and a naked male child and asked MV1 to select the one that most closely resembled his body. MV1 selected the naked male child. MV1 identified his "bottom parts" by pointing to the penis of the paper doll.

- MV1 then said the "bottom parts" were a "wiener" and a "bottom" or a "bum"

When asked if anyone had ever taken videos of his body with no clothes on, MV1 said "I'm not telling you"

24. The Devices are currently in the lawful possession of the Tulsa Police Department. It came into the Tulsa Police Department's possession in the following way: seized during a traffic stop and taken during the execution of a search warrant.

25. The Devices are currently in storage at 1111 W 17th St, Tulsa, Oklahoma 74107. In my training and experience, I know that the Devices have been stored in a manner in which their contents are, to the extent material to this investigation, in

substantially the same state as they were when the Devices first came into the possession of the Tulsa Police Department.

## Technical Terms

26. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

d. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated

19

by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

e. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

27. Based on my training, experience, and research, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, GPS navigation device, portable media player, cloud data management and access device, and mobile application usage. In my training and experience, examining data stored on devices of these types can uncover, among other things, evidence that reveals or suggests who possessed or used the Devices.

**Characteristics Common to Individuals
who Exhibit a Sexual Interest in Children and Individuals who Distribute,
Receive, Possess and/or Access with Intent to View Child Pornography**

28. Based on my previous investigative experience related to child exploitation investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who distribute, receive, possess, and/or access with intent to view child pornography:

a. Such individuals may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity;

b. Such individuals may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts;

c. Such individuals almost always possess and maintain digital or electronic files of child pornographic material, that is, their pictures, videos, photographs, correspondence, mailing lists, etc., in the privacy and security of their home or

21

some other secure location. Individuals who have a sexual interest in children or images of children typically retain pictures, videos, photographs, correspondence, and mailing lists for many years;

d. Likewise, such individuals often maintain their child pornography images in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These child pornography images are often maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, to enable the individual to view the child pornography images, which are valued highly. Some of these individuals also have been found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis;

e. Based on my training and experience and speaking with other special agents, I know that such individuals have taken their electronic devices and storage media, which contain their collections of child pornography, with them when they have moved or changed residences;

f. Such individuals may also take it upon themselves to create their own child pornography or child erotica images, videos or other recordings, or engage in contact sex offenses with children. These images, videos or other recordings may be taken or recorded covertly, such as with a hidden camera in a bathroom, or the individual may have child victims he or she is abusing in order to produce child

22

pornographic or child erotica images, videos or other recordings. Studies have shown there is a high cooccurrence between those who traffic in child pornography and commit sex offenses with children. Such individuals may also attempt to persuade, induce, entice, or coerce child victims in person or via communication devices to self-produce and send them child pornography or to meet in person for sex acts. These images, videos or other recordings are often collected, traded, or shared;

g. Importantly, evidence of such activity, including deleted child pornography, often can be located on these individuals' computers and digital devices through the use of forensic tools. Indeed, the very nature of electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual "deleted"[1] it;

h. Such individuals also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/possessors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, and

---

[1] *See United States v. Carroll*, 750 F.3d 700, 706 (7th Cir. 2014) (concluding that 5-year delay was not too long because "staleness inquiry must be grounded in an understanding of both the behavior of child pornography collectors and of modern technology"); *see also United States v. Seiver*, 692 F.3d 774 (7th Cir. 2012) (Posner, J.) (collecting cases, e.g., *United States v. Allen*, 625 F.3d 830, 843 (5th Cir. 2010); *United States v. Richardson*, 607 F.3d 357, 370–71 (4th Cir. 2010); *United States v. Lewis*, 605 F.3d 395, 402 (6th Cir. 2010).)

telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography;

i. Based on my training and experience, I know that such individuals may use their financial information to buy and sell child pornography online and purchase software used to mask their online activity from law enforcement. For instance, individuals may purchase cryptocurrency such as Bitcoin to buy and sell child pornography online. The use of cryptocurrency provides a level of anonymity because it masks the user's identity when conducting online financial transactions and provides a means of laundering illicit proceeds. Financial information may provide a window into the identities of individuals seeking to buy or sell child pornography online by tying the illicit transactions back to the user. Financial information contained on an electronic device containing child pornography may also provide indicia of ownership. Further, based on my training and experience, I know that individuals involved in the trafficking of child pornography may use sophisticated software, such as router configuration software, virtual private networks, proxy servers, cryptocurrency exchanges, or other anonymizing software, in conjunction with these illicit financial transactions to provide dual layers of anonymity and prevent law enforcement detection. Financial information may indicate which services were purchased to obscure an individual's identity;

24

j. Such individuals prefer not to be without their child pornography for any prolonged period of time. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

### Background on Child Pornography, Computers, and the Internet

29. I have had both training and experience in the investigation of computer-related crimes. Based on my training, experience, and knowledge, I know the following:

a. Computers, smartphones[2] and digital technology are the primary way in which individuals interested in child pornography interact with each other. Computers and smartphones basically serve four functions in connection with child pornography: production, communication, distribution, and storage;

b. Digital cameras and smartphones with cameras save photographs or videos as a digital file that can be directly transferred to a computer by connecting the camera or smartphone to the computer, using a cable or via wireless connections such as "WiFi" or "Bluetooth." Photos and videos taken on a digital camera or smartphone may be stored on a removable memory card in the camera or

---

[2] Smartphones are a class of mobile phones and of multi-purpose mobile computing devices. They are distinguished from feature phones by their stronger hardware capabilities and extensive mobile operating systems, which facilitate wider software, internet (including web browsing over mobile broadband), and multimedia functionality (including music, video, cameras, and gaming), alongside core phone functions such as voice calls and text messaging.

smartphone. These memory cards are often large enough to store thousands of high-resolution photographs or videos;

c. A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Mobile devices such as smartphones and tablet computers may also connect to other computers via wireless connections. Electronic contact can be made to literally millions of computers and smartphones and tablets around the world. Child pornography can therefore be easily, inexpensively and anonymously (through electronic communications) produced, distributed, and received by anyone with access to a computer or smartphone;

d. The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. Electronic storage media of various types – to include computer hard drives, external hard drives, CDs, DVDs, and "thumb," "jump," or "flash" drives, which are very small devices which are plugged into a port on the computer – can store thousands of images or videos at very high resolution. It is extremely easy for an individual to take a photo or a video with a digital camera or camera-bearing smartphone, upload that photo or video to a computer, and then copy it (or any other files on the computer) to any one of those media storage devices. Some media storage devices can easily be concealed and carried on an individual's person. Smartphones and/or mobile

26

phones are also almost always carried on an individual's person (or within their immediate dominion and control) and can additionally store media;

e. The Internet affords individuals several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion;

f. Individuals also use online resources to retrieve and store child pornography. Some online services allow a user to set up an account with a remote computing service that may provide e-mail services and/or electronic storage of computer files in any variety of formats. A user can set up an online storage account (sometimes referred to as "cloud" storage) from any computer or smartphone with access to the Internet. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer, smartphone or external media in most cases; and

g. As is the case with most digital technology, communications by way of computer or smartphone can be saved or stored on the computer or smartphone used for these purposes. Storing this information can be intentional (i.e., by saving an e-mail as a file on the computer or smartphone, or saving the location of one's favorite websites in, for example, "bookmarked" files). Digital information can also be retained unintentionally such as the traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer or smartphone user's Internet activities generally

leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data.

### Specifics of Search and Seizure of Computer Systems

30. As described above and in Attachment B, this application seeks permission to search for records that might be found on the Device in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media, such as a cellular phone, smartphone, or tablet. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

31. I submit that there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data;

28

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file;

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information;

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

32. As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant but also for forensic electronic evidence that establishes how the Devices were used, the purpose of the use, who used the Devices, and when. There is probable cause to believe that this forensic electronic evidence will be on the Devices because:

29

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified;

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and

malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that logs the following: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic

31

and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement);

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when;

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant;

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent;

f. I know that when an individual uses a computer to obtain or access child pornography, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

33. Based upon my training and experience and information relayed to me by agents and others involved in the forensic examination of computers, I know that computer data can be stored on a variety of computer systems and storage devices, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable

of storage, smartphones, floppy disks, compact disks, magnetic tapes, memory cards, memory chips, and online or offsite storage servers maintained by corporations, including but not limited to "cloud" storage. I also know that:

a. Searching computer systems is a highly technical process which requires specific expertise and specialized equipment. There are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software website, or operating system that is being searched;

b. Searching computer systems requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted, or password-protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted;

34

c. The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of a premises; and

d. Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, computer users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography a computer user can conceal text in an image file which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is contraband, evidence, fruits, or instrumentalities of a crime.

34. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent

with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## Electronic Storage and Forensic Analysis

35. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

36. I know that cellular telephones are often equipped with digital cameras and those phones possess the capability to transmit and/or store electronic images. I know that in many cases, cellular telephones maintain photographs of illegal activities, including possession, receipt, and distribution of child pornography. These photos are sometimes stored in their cellular phones and often are transmitted or sent from one electronic media device to another. I also know that cellular phones may also contain notes regarding potential illegal acts that are recorded by the subject who possesses the electronics. Furthermore, I know that text messages and emails are often used by two or more persons to communicate information regarding illegal activities, between principals and co-conspirators of those crimes.

37. I know that cellular telephones are utilized by the majority of individuals in the United States and have become a staple of communication between individuals

36

using text messaging, visual and audible communications (telephone calls and FaceTime type communications) as well as applications like "Kik," and "Session." Additionally, individuals utilize their cellular devices to take pictures, keep notes, as a GPS (global positioning System) device, and even to conduct illicit or illegal activity. Communications on phones are kept for long periods and transferred from one phone to another when replaced. This is done through the use of Cloud storage and direct transfer conducted at the time of purchase or by the individual themselves. Individuals utilize this method as not to lose data that is stored on the phone such as contacts, photos, notes, and other important information to the individual. This data includes contacts used to conduct illegal activities to include possession, receipt, and distribution of child pornography.

38. Cellular telephones are often used to facilitate offenses and allow criminals to maintain communication with each other before, during and after the commission of offenses. I am aware that cellular telephones have the capacity to store a vast amount of information, including but not limited to: telephone numbers, voice messages, text messages, e-mail, photographs, videos, address books, records, phone call histories, contact and other information. This information may be contained on the cellular telephone.

39. *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them,

and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

28. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

29. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

30. *Methods of examination.* In conducting this examination, law enforcement personnel may use various methods to locate evidence and instrumentalities of the crimes under investigation, including but not limited to undertaking a cursory inspection of all information within the Devices. This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information

39

subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with stored cellular device data, such as pictures and videos, do not store as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications associated with a cellular device, as it is impossible to know in advance all of the unique words or phrases investigative subjects will use in their communications. Consequently, often many communications in cellular device data that are relevant to an investigation do not contain any searched keywords.

### Conclusion

31. Based on the information set forth in this affidavit, I submit there is probable cause to believe that 18 U.S.C. § 2251(a) (Sexual Exploitation of a Child); 18 U.S.C. §§ 2252(a)(2) and (b)(1) (Receipt and Distribution of Child Pornography); and 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) (Possession of and Access with Intent to View Child Pornography), have been violated, and that evidence of these offenses, more fully described in Attachment B, are located on the Devices described in Attachment A. I respectfully request that this Court issue a search warrant for the property described in Attachment A, authorizing the seizure of the items described in Attachment B.

32. I request to be allowed to share this affidavit and the information obtained from this search with any government agency, to include state and local agencies investigating or aiding in the investigation of this case or related matters, and to

disclose those materials as necessary to comply with discovery and disclosure

obligations in any prosecutions from this matter.

Respectfully submitted,

Aubrey Williams
Task Force Officer
Homeland Security Investigations

Subscribed and sworn to by phone on January __17th__, 2025.

JODI F. JAYNE
UNITED STATES MAGISTRATE JUDGE

42

## ATTACHMENT A

### Property to be Searched

The property to be searched are as follows: hereinafter the "Devices":

    a. Nikon Camera

    b. Samsung Tablet

    c. Compaq PC

    d. Asus Laptop black in color, serial number 15G29L000780

    e. Asus Destroyed Laptop

    f. HP Laptop red in color

    g. HP Laptop blue in color

    h. TCL Tablet

    i. Gateway Laptop

    j. EMachines PC

    k. Asus Laptop silver in color

    l. Seagate 2TB Hard Drive

    m. Seagate 1TB Hard Drive

    n. WD 1TB Hard Drive

    o. Asus Laptop black in color

    p. Samsung Cell Phone, black in color

the full contents of The Devices are currently located at Tulsa Police Department Property Room at 1111 W 17th St, Tulsa, Oklahoma 74107.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

**Particular Things to be Seized**

All records on the Devices described in Attachment A that relate to violations of 18 U.S.C. § 2251(a) (Sexual Exploitation of a Child);18 U.S.C. §§ 2252(a)(2) and (b)(1) (Receipt and Distribution of Child Pornography); and 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) (Possession of and Access with Intent to View Child Pornography), including:

A. Images/videos/gifs of child pornography or child erotica; files containing images/videos/gifs; and data of any type relating to the sexual exploitation of minors or a sexual interest in children, material related to the possession thereof, and data of any type related to any person employing, using, persuading, inducing, enticing, or coercing any minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting such visual depiction of such conduct, in any form wherever it may be stored or found, including, but not limited to:

i. Graphic Interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG) of child pornography; files relating to the distribution, receipt, or possession of child pornography, or information pertaining to an interest in child pornography;

ii. Files in any form containing the visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 or relating to the sexual exploitation of minors; and

iii. Stories, text-based files, motion pictures, films, videos, and other recordings of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 or relating to the sexual exploitation of minors.

B. Information, correspondence, records, documents or other materials pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, or pertaining to the sexual exploitation of minors or a sexual interest in children, that were transmitted or received using computer, cellular device, personal digital assistant, or some other facility or means of interstate or foreign commerce, common carrier, or the U.S. mail including, but not limited to:

i. Correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 or relating to the sexual exploitation of minors or a sexual interest in children;

2

iii. Any and all electronic and/or digital records and/or documents pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate commerce including by United States mail or by computer, any visual depiction of a minor engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256 or relating to the sexual exploitation of minors;

iv. Any and all electronic and/or digital records and/or documents including any and all address books, names, and lists of names and addresses of minors visually depicted while engaging in sexually explicit conduct, defined in Title 18, United States Code, Section 2256; or relating to the sexual exploitation of minors;

v. Any and all records of Internet usage including usernames and e-mail addresses and identities assumed for the purposes of communication on the Internet. These records may include billing and subscriber records, chat room logs, e-mail messages, and include electronic files in a computer and on other data storage mediums

vi. Any physical keys, encryption devices, dongles and similar physical items necessary to access computer equipment, storage devices or data;

3

      vii. Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data; and

      viii. Files, records, programs, logs, electronic communications, scanning programs, financial records, hacking software, or router configuration software.

C. Records or other items which evidence ownership, use, or control of the Devices described in Attachment A.

D. Credit card information including but not limited to bills and payment records, including but not limited to records of internet access.

E. Any and all information, correspondence (including emails), records, documents and/or other materials related to contacts, in whatever form, with minors involving the production, possession and/or distribution of child pornography and the attempt or act of educing, enticing, coercing, or persuading a minor to engage in sexual acts.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage.

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

4

The term "storage medium" includes any physical object upon which computer data can be recorded, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact discs, magnetic tapes, memory cards, memory chips, and other magnetic or optical media.